UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK J. VERMURLEN and
SHERRIE R. VERMURLEN,

        Plaintiffs,

v.

AMERIQUEST MORTGAGE
COMPANY, AMC MORTGAGE SERVICES,
DEUTSCHE BANK NATIONAL TRUST
COMPANY, and AMERIQUEST MORTGAGE
SECURITIES, INC.

        Defendants.
_____/

Case No. 1:06-cv-828

Hon. Wendell A. Miles

OPINION AND ORDER

      Plaintiffs brought this action in the Ottawa County Circuit Court. Defendants removed the case to this court on November 22, 2006. Presently before the court are Motions for Summary Judgment filed by Defendants (docket #14), and by Plaintiffs (docket #21). For the reasons that follow, the court denies Plaintiffs' motion, grants Defendants summary judgment on Plaintiffs' claim under the Truth in Lending Act; dismisses Plaintiffs' claim under the Michigan Consumer Protection Act, MCL § 445.903(o); and remands the case to the Ottawa County Circuit Court.

Background

      In 2004, Ameriquest contacted Plaintiffs regarding refinancing their home, located in Holland, Michigan. Ameriquest appraised Plaintiffs' residential property at $161,000. On March 29, 2004, Plaintiffs and Ameriquest Mortgage Company (Ameriquest) entered into a loan

agreement secured by Plaintiffs' property.  The transaction was the refinancing of an existing mortgage loan held by Ameriquest.  Ameriquest did not provide Plaintiffs with copies of the loan documents prior to closing, which was held at the Plaintiffs' home.  The matter was handled by a notary public and no representative of Ameriquest was present.  The Plaintiffs later reviewed the loan documents which they received at closing, and determined that the documents did not include the terms that Plaintiffs had expected based upon their conversations with Ameriquest.

Plaintiffs eventually defaulted on their loan obligation.  In April 2006, Plaintiffs and Ameriquest agreed to resolve all issues related to the 2004 transaction and subsequent default.  On April 5, 2006, Plaintiffs signed a "Forbearance Agreement," which provided for their loan to be reinstated and set an agreed upon payment schedule that enabled Plaintiffs to cure their default.  Under the terms of the Forbearance Agreement, Plaintiffs also released all of their claims and potential claims against Ameriquest and Ameriquest Mortgage Securities, Inc. pertaining to the 2004 loan transaction.  (Pls. Resp., dkt. #19, ex. 5).  When Plaintiffs again defaulted on their loan obligation, on September 14, 2006, Ameriquest began the foreclosure process. (Compl., ex. 3).  On October 4, 2006, through their attorney, Plaintiffs mailed Defendants a notice of rescission, attempting to rescind the 2004 loan transaction for noncompliance with the Truth in Lending Act (TILA). (Dkt. #19, ex. 3).  By letter dated October 18, 2006, Ameriquest responded that it had fully complied with the TILA, rejecting a recission. (Id., ex. 4).

Plaintiffs filed the instant lawsuit asserting the following four claims: (1) violation of the notice provision of the TILA, 15 U.S.C. § 1635; (2) violation of the Michigan Mortgage Brokers, Lenders and Services Lending Act, MCL § 445.1672(b); (3) breach of contract; and (4) violation

2

of the Michigan Consumer Protection Act, MCL § 445.903(o).

## Standard of Review

Federal Rule of Civil Procedure 56(c) provides that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1996).  The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The party opposing the motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate." <u>Braithwaite v. The Tinken Co.</u>, 258 F. 3d 488, 493 (6th Cir. 2001).

## Discussion

In Count I of their complaint, Plaintiffs seek to rescind the 2004 loan transaction, contending that they had three years to rescind the transaction because of Defendants' violation of the notice provision of the TILA.  Defendants argue that Plaintiffs are not entitled to an extension of time to rescind because the notice provided to them satisfied all statutory and

3

regulatory requirements and they waived the right to rescind by signing the Forbearance Agreement.

The TILA gives a consumer borrower "the right to rescind the transaction." 15 U.S.C. § 1635(a). The regulations implementing the TILA (Regulation Z of the Code of Federal Regulations) provide that with certain exceptions, "in a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction." 12 C.F.R. § 226.23(a). A consumer may rescind until midnight of the third business day following the last to occur of either (a) consummation of the credit transaction[1], (b) delivery by the lender of the notice of right to rescind, or (c) delivery of all material disclosures. 12 C.F.R. § 226.15(a)(3)**.** Here, all three triggering events occurred on March 29, 2004. Plaintiffs, therefore, would generally have had until midnight of April 1, 2004 to rescind the transaction. However, where the notice of the right to rescind is not delivered to the consumer, the right to rescind is extended until 3 years after consummation of the transaction. 12 C.F.R. § 226.23(a)(3). Thus, if Plaintiffs did not receive a proper notice of their right to rescind, they would have had until March 28, 2007 to rescind the 2004 transaction, and their notice of recession dated October 4, 2006 would have been timely.

The purpose of the TILA is "to protect the consumer against inaccurate and unfair credit . . . practices," and "to assure a meaningful disclosure of credit terms." 15 U.S.C. § 1601(a). To advance these goals, the TILA requires creditors to disclose clearly and accurately

---

[1] Consumation is defined as the "time that a consumer becomes contractually obligated on a credit transaction." 12 C.R.R. § 226.2

all material terms of a credit transaction.  Beach v. Owen Fed. Bank, 523 U.S. 410, 412 (1998).  Specifically, a notice of the right to recession must "clearly and conspicuously disclose:" (a) that the lender has retained a security interest in the consumer's principle dwelling, (b) that the consumer has the right to rescind the transaction, (c) how to exercise the right to rescind, (d) the effects of recession, and (e) the date the recession period expires. 12 C.F.R. § 226.23(b)(1).  Whether a particular disclosure is clear and conspicuous is a question of law.  Smith v. Check and Go of Ill., 200 F.3d 511, 515 (7th Cir. 1999); Herrera v. First Northern Savings & Loan Ass'n, 805 F.2d 896, 900 (10th Cir. 1986); Dixey v. Idaho First Nat'l Bank, 677 F.2d 749 (9th Cir. 1982).

The Federal Reserve Board (FRB) is authorized to issue model forms for common transactions, which it has done.  15 U.S.C. § 1604(b); see Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 567 (1980) ("Congress has specifically designated the [Federal Reserve Board] . . . as the primary source for interpretation and application of the truth-in-lending law.").  Plaintiffs argue that the notice they received from Defendants was on FRB Model Form H-8 rather than Model Form H-9, which is the proper form for transactions involving parties who are refinancing a loan with the original creditor.  The TILA provides that a creditor "shall be deemed to be in compliance with the disclosure provisions" of the TILA "with respect to other than numerical disclosures" if the creditor uses any appropriate model form as published by the Federal Reserve Board, or a modified model form if the modification does not affect the "substance, clarity, or meaningful sequence of the disclosure."  15 U.S.C. § 1604(b).  Moreover, the Regulations provide that  "the creditor shall provide the appropriate model form in Appendix H of this part or a *substantially similar notice*."  12 C.F.R. § 226.23(b)(2) (emphasis added).  Because the plain

language of the statute and regulations does not mandate exclusive use of the model forms, a lender's use of Model Form H-8 does not constitute a per se violation of the TILA or Regulation Z.

Plaintiffs look to the Seventh Circuit for the proposition that "hypertechnicality reigns in the application of TILA." Smith v. Cash Store Mgmt., 195 F. 3d 325, 328 (7th Cir. 1999). In In re Ameriquest Mortgage Co., Lead Case No. 05-cv-7097 (E.D. Ill. May 30, 2006), the multiple plaintiffs alleged TILA notice violations based in part on the defendants improper use of Model H-8 forms. The Court concluded that in order to prevail, the plaintiffs must show that the notices omitted the rescission deadline or "were not intended for the type of transaction at issue," but need not show "that they were mislead or suffered any actual damages" as a result of the alleged notice violation. Id. (Plaintiffs' Motion for Summary Judgment, Ex. 7). In contrast, Defendants rely on Santos-Rodriguez v. Doral Mortgage Corp., 485 F.3d 12 (1th Cir. 2007) where the First Circuit addressed and rejected the same "wrong form" argument, and specifically noted that it declined to follow the Seventh Circuit's rule of hyper-technicality. Id. at 17, n.6. In Mills v. Equicredit Corp., 294 F. Supp.2d 903 (E.D. Mich. 2003), the consumer plaintiffs claimed that the lender used the wrong form to notify them of their right to rescind, thereby entitling plaintiffs to equitable tolling of the statute of limitations. The district court held that even assuming the defendant used a technically incorrect form, the form adequately apprised the plaintiffs of the right to rescind within three days. Therefore, the defendants did not affirmatively conceal the plaintiffs' TILA cause of action and there was no basis for applying equitable tolling. Id. at 910. In an unpublished opinion affirming the district court, the Sixth Circuit rejected the plaintiffs' position of equating "the use of the incorrect form with the failure

to notify them of their right to rescind." Mills v. Equicredit Corp., 172 F. App'x 652, 656-57 (6th Cir. 2006). Although the case is not directly on point, the court concludes that if presented with the issue raised here, the Sixth Circuit would decline to adopt the hyper-technical approach of the Seventh Circuit, and would more closely follow the reasoning of the Santos-Rodriguez Court.

      The court must review the notice that Plaintiffs did receive to determine if it "clearly and conspicuously" discloses those factors set forth at 12 C.F.R. § 226.23(b)(1): (a) that the lender has retained a security interest in the consumer's principle dwelling, (b) that the consumer has the right to rescind the transaction, (c) how to exercise the right to rescind, (d) the effects of recession, and (e) the date the recession period expires. Disclosures should contain simple sentences and simple words. Burton v. Public Finance Corp. of Akron, 657 F.2d 842, 843 (6th Cir. 1981); and see Thomka v. A.Z. Chevrolet, Inc., 619 F.2d 246, 248 (3d Cir. 1980) (disclosures must be in comprehensible language and form). Here, the notice is titled in bold letters "NOTICE OF RIGHT TO CANCEL." The first sentence reads, "[y]ou are entering into a transaction that will result in a mortgage/lien/security interest on your home," which satisfies requirement (a). The second sentence reads: [y]ou have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS . . . ." Immediately preceding the signature line, it states that "[e]ach borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers," satisfying requirement (b). Set off within a box titled "HOW TO CANCEL," are clear directions for canceling the transaction, including the final date to cancel. The date shown is "April 1st 2004," and both Plaintiffs initialed this line. This satisfies factors (c) and (e). Explaining the effects of recession,

the notice states:

> If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.
>
> You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

("NOTICE OF RIGHT TO CANCEL," Pls. Motion for Summary Judgment, docket #21, Ex. 3).

The one page document sets forth the required disclosures in clear and unambiguous language, and would effectively apprise a reasonable borrower of his or her rights and responsibilities. Although Defendants did not use Model Form H-9, the notice that was provided kept the "substance, clarity, or meaningful sequence" of the requisite disclosures intact. 15 U.S.C. § 1604(b).

The inquiry, however, does not end here. When Plaintiffs received the Notice of Right to Cancel, they also received a one page document titled in bold: "ONE WEEK CANCELLATION PERIOD." The document states in part:

> **You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice To Right to Cancel you have received today.
> Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide**

> **you with one week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10.00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays. (Emphasis in original).

("ONE WEEK CANCELLATION PERIOD," Pls. Motion for Summary Judgment, docket #21, Ex. 2). Plaintiffs argue that it is potentially confusing to a borrower to be provided with two different notices, and therefore, the borrower's rights would not be presented in a clear and conspicuous manner. The situation here is distinguishable from the case cited by Plaintiffs, Handy v. Anchor Mortgage Corp., 464 F.3d 760 (7th Cir. 2006), where the plaintiff received both Form H-8 and Form H-9, which respectively contained terms that could reasonably be read to conflict with one another. The court found that where "more than one reading of a rescission form is plausible, the form does not provide the borrower with a clear notice of what her right to rescind entail[s]." Id. at 764 (citations omitted). Here, the ONE WEEK CANCELLATION document unambiguously informs the borrower that it serves only to extend the time to cancel from the statutory three days to a contractual seven days, and otherwise presents no different or additional terms that conflict with those in the Notice of Right to Cancel. Accordingly, Defendants did not violate the TILA or Regulation Z, Plaintiffs' right to rescind the loan was not extended for three years, and their October 2006 attempt to rescind was untimely. Defendants are entitled to summary judgment on this claim.

Forbearance Agreement

Defendants contend that Plaintiffs waived their right to bring this suit by signing the

Forbearance Agreement, which is a three page document titled "Forbearance Agreement."[2] The first paragraph of the document states:

> By these signatures below, PATRICK J. VERMURLEN and SHERRIE R. SCHOFIELD the recitals, terms, and conditions of the Forbearance Agreement and AMC Mortgage Services, Inc. ("Lender") in consideration for the Borrowers performance of the duties and obligations imposed hereby, agrees to forbear certain rights, privileges, and authority in accordance with the following:
>
> It is acknowledged that Borrowers became indebted to Lender pursuant to a Loan Agreement and Promissory Note in the amount of $147,600. Said note is secured by a Mortgage executed by Borrowers in favor of Lender, encumbering property located at: 791 W. 26TH St. # W, HOLLAND, MI,. 49423.
>
> It is acknowledged that the Loan may be reinstated and the default cured by the payment schedule below, plus all attorney fees and foreclosure fees and costs incurred by lender, to date of such cure. Lender's internal application of Borrowers payment to Borrowers Loan under the Forbearance Agreement shall not be deemed to cure the default referenced in the Publication unless and until the loan is fully reinstated in accordance with the terms of the payment schedule set forth below.

(Pls.' Response to Defs. Mt. For Summary Judgment, docket #19, Ex. 5, p.1). The document also includes a paragraph titled "Releases," which states in relevant part:

> Effective upon the execution hereof, and notwithstanding any failure of Borrowers to satisfy any of the conditions precedent set forth above, Borrowers hereby agree that, without any further act, Lender is fully and forever released and discharged from any and all claims for damages or losses to Borrower's property or person (whether these damages or losses are known or unknown, foreseen or unforeseen, or patent or latent) including, without limitation, tort claims, demands, actions and causes of action of any nature, whatsoever arising under or relating to the Loan Documents or any of the transactions related thereto, prior to the date hereof, . . . .[3]

---

[2] The Sixth Circuit has held that recission is available even if the loan that the borrower seeks to rescind has been refinanced. <u>Barrett v. JP Morgan Chase Bank, N.A.</u>, 445 F.3d 874 (6th Cir. 2006).

[3] The language that follows pertains to the California Civil Code and is not relevant in this action.

(Id. at p. 2). The remainder of the document sets forth the default amount, payment schedule, and other terms of the agreement. "Federal law controls the validity of a release of a federal cause of action." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1481 (6th Cir. 1989); accord Town of Newton v. Rumery, 480 U.S. 386, 392 (1987); Dice v. Akron, Canton & Youngstown Railroad Co., 342 U.S. 359, 361-62 (1952) (Federal Employers' Liability Act).

In Brooklyn Savings Bank v. O'Neil, 324 U.S. 697 (1945), the Supreme Court addressed the question of waiver under the Fair Labor Standards Act. The Court held that "a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy." Id. At 704. Applying this standard, the Court found that "the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages." Id. at 707; see also, Alexander v. Gardner-Denver Co., 415 U.S. 36, 51-52 (1974) (Because waiver of an employee's rights to be free from discriminatory practice would "defeat the paramount congressional purpose behind Title VII . . . an employee's rights under Title VII are not susceptible of prospective waiver."). The court in Parker v. DeKalb Chrysler Plymouth, 673 F.2d 1178 (11th Cir. 1982), found that the TILA has both a public and private purpose to justify its enforcement. Id. At 1181. "The public benefits from enforcement of TILA because it creates a system of disclosure that improves the bargaining posture of all borrowers." Id. "Not only does TILA contemplate a public interest in the enforcement of individual rights, but the public must rely largely on the efforts of individual consumers acting as 'private attorney general[s]' to achieve the disclosure system envisioned by the Act. Id., quoting McGowan v. King, Inc., 569 F.2d 845, 848 (5th Cir. 1978); and see Begela v. PNC Bank, 163 F.3d 948, 950

(6th Cir. 1998) (explaining that TILA was designed to create a "'system of private attorney generals to aid its enforcement,'" quoting Jones v. The TransOhio Sav. Ass'n, 747 F.2d 1037, 1040 (6th Cir. 1984). Relying on the rationale of Brooklyn Savings Bank, the Parker Court reasoned that if consumers were permitted to waive potential TILA claims, the "public interest in deterring inconsistent and undecipherable lending practices would be greatly hampered. Id. Accordingly, the Court held that the plaintiff's release did not bar her TILA claim. Id.

The court finds the reasoning in Parker to be persuasive. Defendants have not cited, and the court has not found, courts from other circuits that reject the reasoning or holding in Parker. Regulation Z, however, does provide for a very limited circumstance under which the consumer is authorized to modify or waive the right to rescind: where the consumer determines the extension of credit is needed "to meet a bona fide personal financial emergency." Regulation Z § 226.23(e). To waive the rescission right, the consumer must give the creditor a dated, written statement that (1) describes the personal financial emergency, (2) specifically waives the consumer's right to rescind, and (3) bears the signatures of all the consumers entitled to rescind the transaction. Id. Printed forms may not be used for this purpose. Id. In this case, the Forbearance Agreement was on a printed form and did not specifically waive Plaintiffs' TILA rights; further, Plaintiffs did not submit a written statement describing any personal financial emergency. The Forbearance Agreement clearly does not satisfy the narrowly drawn requirements of the TILA for a valid waiver.

While the court finds that Defendants did not violate the TILA, it also finds that the Forbearance Agreement signed by the Plaintiffs did not waive their right to bring an action under the TILA. See Mills v. Home Equity Group, 871 F.Supp. 1482, 1485-86 (D.C. 1994) (the right

to rescind "cannot be released or waived absent the narrowly drawn circumstances found in TILA for such waiver.").

State law claims

Plaintiffs have also asserted the following state law claims: (1) violation of the Michigan Mortgage Brokers, Lenders and Services Lending Act, MCL § 445.1672(b); (2) breach of contract; and (3) violation of the Michigan Consumer Protection Act, MCL § 445.903(o). Plaintiffs acknowledge that mortgage loan transactions are statutorily exempt from the Michigan Consumer Protection Act, and agree to dismiss this claim. (Plaintiffs' Response to Defendants' Motion for Summary Judgment, docket #19, p. 9). See MICH. COMP. LAWS § 445.904(1)(a), (The act does not apply to "a transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state of the United States."); Newton v. Bank West, 686 NW 2d 491, 493 (Mich. App. 2004) (finding that residential mortgage transactions fit squarely within the exception of MICH. COMP. LAWS § 445.904(1)(a)). Accordingly, the court will dismiss this claim.

A district court should remand a properly removed case to state court if all federal law claims have been eliminated and only state law claims remain. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded); Carnegie-Mellon University v. Cohill, 484 U.S. 343, 351-52 (1988). Therefore, the court will remand this case to the Ottawa County Circuit Court to proceed on Plaintiffs' claims of violation of the Michigan Mortgage Brokers, Lenders and Services Lending Act, MCL § 445.1672(b) and breach of contract;

Conclusion

For the foregoing reasons, the court DENIES Plaintiffs' Motion for Summary Judgment (docket #21); GRANTS Defendants' Motion for Summary Judgment (docket #14) on Count I, violation of the Truth in Lending Act; DISMISSES the claim under the Michigan Consumer Protection Act, MICH. COMP. LAWS § 445.903(o); and REMANDS this case to the Circuit Court for the County of Ottawa, Michigan.

So ordered this 9th day of October, 2007.

    /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge